## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO.: 14-22636-CIV-HUCK/OTAZO-REYES

GREGORY FISHER,

     Plaintiff,

vs.

MIAMI-DADE COUNTY, et al.,

     Defendants.

_____/

## ORDER DENYING MOTION TO DISMISS

THIS CAUSE is before the Court on Miami-Dade County's (the "County") Motion to Dismiss the Amended Complaint [D.E. 60]. Plaintiff Gregory A. Fisher was a pretrial detainee in a County jail from April 4 to 11, 2011. The Amended Complaint [D.E. 53] alleges that, during Plaintiff's detention, County employees refused to provide him with the treatment necessary for his chronic bowel and bladder conditions, and as a result, he suffered pain and significant complications, including a kidney infection and an eight-month confinement to a wheelchair. Plaintiff alleges that the County employees' actions constituted deliberate indifference to his serious medical needs, and that the County itself caused this constitutional deprivation by adopting a broader policy or custom of deliberate indifference to the medical needs of inmates, in contravention of 42 U.S.C. § 1983. The County contends that the Amended Complaint fails to state a claim upon which relief can be granted, because Plaintiff has not shown that the alleged deprivation of his right to medical care was caused by a County policy. However, because Plaintiff has plausibly alleged that County policymakers were aware of and disregarded a pervasive pattern of deliberate indifference to inmates' medical needs, the Court denies the County's motion.

## I.    BACKGROUND

The following facts are taken from the Amended Complaint, as the Court is bound to accept Plaintiff's factual allegations as true on a motion to dismiss. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention,* 623 F.3d 1371, 1379 (11th Cir.2010).

### A.    Plaintiff's arrest and detention

On April 4, 2011, Plaintiff was arrested[1] and detained in the Stockade, a County jail. Plaintiff, a New York resident, had traveled to Miami to seek treatment for his chronic bowel and bladder conditions, which render it difficult for him to urinate and defecate without catheters and medication. After Plaintiff was booked into the Stockade, he alerted correctional officers[2] to his condition and requested treatment. The officers ignored the requests, and even mocked Plaintiff's condition. For example, Plaintiff complained to one officer that he was in extreme pain, could not move his bowels, and needed immediate treatment. The officer responded by laughing and telling Plaintiff to "walk it off." Plaintiff similarly complained of his extreme pain and worsening condition to another officer, who responded "you don't get no sympathy here," and then belittled Plaintiff by repeatedly asking him, over the remainder of his detention, "you still gotta s--t?". Plaintiff also twice requested assistance from the County employee responsible for arranging inmates' medical treatment, who apparently took no action on the requests.

It required the intervention of out-of-state law enforcement officers to prompt County employees to finally treat Plaintiff's chronic condition. On April 11, 2011—after Plaintiff had been detained in the Stockade for a week without treatment—New York police officers arrived

---

[1] Plaintiff does not elaborate on the circumstances of his arrest, but characterizes it as an "unlawful arrest and stop." *See* Am. Compl. [D.E. 53] ¶ 10.

[2] Plaintiff has named these correctional officers as co-defendants. Two have answered the Amended Complaint with affirmative defenses [D.E. 61 & 62], and one has moved to dismiss [D.E. 75]. This order, however, is limited to the arguments raised in the County's motion to dismiss [D.E. 60].

to extradite Plaintiff to New York. The New York officers found Plaintiff to be severely ill and in pain, and refused to take custody of him. At these officers' insistence, a County nurse saw Plaintiff. The nurse observed that Plaintiff was experiencing difficulties with his vision, had developed a bladder infection, could not walk without a cane, had residual paralysis in the bladder and bowels, and was severely constipated. County medical personnel treated Plaintiff, but he suffered prolonged detrimental effects from his incarceration. He was confined to a wheelchair for eight months, and developed bradycardia (a low heart rate), hydronephrosis (swelling of the kidney), and a kidney infection.

## B.     The County's alleged custom of deliberate indifference

Plaintiff alleges that his mistreatment was the product of a County custom or practice of deliberate indifference to inmates' medical needs. Plaintiff alleges that, in the years preceding his arrest and detention at the Stockade, numerous similar incidents of deliberate indifference to inmates' medical needs occurred, and that County policymakers were aware of this pattern, but did not correct it. Plaintiff has, for example, identified 20 other incidents in which County inmates' medical needs were improperly treated, or entirely untreated, by County employees. Eight of these incidents resulted in inmates' deaths, and others resulted in prolonged hospitalizations and severe injuries. County policymakers were made aware of at least three of these incidents through complaints that the inmates' families made directly to County officials including the mayor, a County commissioner, the mayor's chief of staff, and the County manager and assistant County manager. Plaintiff has also identified at least five lawsuits against the County in which Florida Circuit Court and Miami-Dade County judges, and this Court, ordered the County to provide necessary care to specific inmates, or found that County employees had been deliberately indifferent to inmates' medical needs. Plaintiff further alleges that the local

-3-

news media reported extensively on these and other instances in which County inmates' serious medical needs were ignored or improperly treated by County jail employees.

According to the Amended Complaint, County policymakers were also directly notified of potential constitutional deficiencies in the County's provision of medical care to inmates by the United States Department of Justice (DOJ). In 2008, the DOJ informed the County that it was initiating an investigation "to determine whether there are systemic violations of the Constitution of the United States in the conditions at the Miami-Dade County Jail." The DOJ's notice also explicitly stated that the investigation would focus on potential deprivations of inmates' constitutional right to medical care while in custody. Plaintiff alleges that the mayor acknowledged this investigation and pledged to make reforms, but in 2011, a few months after Plaintiffs' detention, the Department of Justice issued a formal report concluding that the County had violated its inmates' constitutional rights by, among other things, permitting employees to be deliberately indifferent to inmates' serious medical needs. The report specifically identified constitutional deficiencies in the County's identification, treatment, and tracking of inmates' chronic illnesses. And though the report was not released until after Plaintiff's detention, Plaintiff contends that County policymakers cooperated in the DOJ's three-and-a-half year investigation and were aware of many of its findings well before April 2011.

Plaintiff further alleges that, despite being on notice of a pattern of deliberate indifference to inmates' medical needs, the County failed to take remedial action. For example, in 2012 and 2013, Plaintiff alleges that inmate deaths in County jails were in "double digits," and were largely attributable to County employees' deliberate indifference to these inmates' medical needs. Further, in May 2013, the DOJ intervened yet again, filing suit against the County in the Southern District of Florida for, among other things, "fail[ing] to take basic steps to correct the

inadequate . . . medical care" described in the DOJ's 2011 investigative report. *See United States v. Miami-Dade Cnty.*, No. 1:13-cv-21570-WJZ [D.E. 1] (S.D. Fla.). The DOJ's suit concluded with a consent agreement in which the County agreed to remedy the constitutional violations identified in the DOJ's prior investigation. *See id.* [D.E. 9]. Finally, Plaintiff alleges that several members of the Board of County Commissioners have expressed on-the-record concerns of an ongoing "systemic" pattern of deliberate indifference to County inmates' rights, including their rights to medical treatment.

## II.    ANALYSIS

Plaintiff asserts that the County itself violated his Fourteenth Amendment due process right[3] to receive medical care while detained by the County. The County has moved to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For his Amended Complaint to survive the County's motion, Plaintiff must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

42 U.SC. § 1983 provides a private cause of action to redress constitutional deprivations by a municipality, but does not impose liability simply on the basis of an employer-employee relationship with an alleged tortfeasor, that is, *respondeat superior* liability. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *see also McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Rather, Plaintiff must show that the County itself caused his injury.

---

[3] Treatment of a pretrial detainee is governed by the Fourteenth Amendment's Due Process clause; a convicted prisoner is protected by the Eighth Amendment's Cruel and Unusual Punishment Clause. *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997). The standards, however, are essentially the same in the context of a deliberate indifference analysis. *See id.* (citations omitted).

his injury. *McDowell*, 392 F.3d at 1289. To do so, Plaintiff must plausibly allege that: "(1) that his constitutional rights were violated;[4] (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

The County's motion to dismiss primarily involves the second element of *Monell* liability—the existence of a custom or policy of deliberate indifference. *See id.* To plausibly allege the existence of such a policy, Plaintiff must plead facts showing either (1) an official policy or (2) an unofficial custom or practice shown through the repeated acts of final policymakers. *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citations omitted). Here, Plaintiff travels the "unofficial custom or practice" avenue to relief, which requires him to demonstrate a longstanding unconstitutional pattern of mistreatment that is "deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (internal citations and quotations omitted). In other words, to state an unofficial custom or practice of deliberate indifference, Plaintiff must allege (1) a pattern of deliberate indifference (2) that County policymakers had notice of and (3) implicitly ratified by failing to stop.

## A.    The alleged pattern of deliberate indifference

To plausibly allege an unofficial custom or practice of deliberate indifference, Plaintiff must first show a "persistent and widespread practice" of constitutional deprivations. *Depew v. City of St. Mary's, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986). Plaintiff may do so by showing "other incidents involving similar facts." *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005). "Repeated examples of delayed or denied medical care may indicate a

---

[4] The County does not contest that Plaintiff has plausibly alleged a deprivation of his Fourteenth-Amendment right to medical care while incarcerated.

deliberate indifference by prison authorities to the suffering that results." *Rogers v. Evans*, 792 F.2d 1052, 1059 (11th Cir. 1986). A few isolated instances would not suffice to meet this high burden; rather, Plaintiff must show unconstitutional behavior that was "obvious, flagrant, rampant, and of continued duration . . . ." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).

Plaintiff's Amended Complaint contains detailed allegations of a pattern of deliberate indifference to inmates' medical needs. Plaintiff has identified, for example, 117 inmate deaths in the years preceding his detention. Plaintiff alleges that many of these deaths resulted from County employees' deliberate indifference to inmates' medical needs. Plaintiff has further identified 20 specific instances in which County employees withheld necessary medical care from inmates, or provided insufficient medical care, resulting in severe injury or death to those inmates. Plaintiff also cites to judicial orders and media reports related to other instances in which County employees were deliberately indifferent to inmates' medical needs.

This Court and others have found similar allegations to show a plausible pattern of deliberate indifference, at the motion to dismiss stage of litigation. In *La Bruno v. Miami-Dade County*, No. 10-cv-22554, 2011 WL 1102806 at *8 (S.D. Fla. Mar. 23, 2011), for example, this Court held that allegations of ten similar prior incidents, along with extensive media coverage of substandard medical care in County jails, raised a plausible inference that the County's "failure to respond to the knowledge that inmates were receiving inadequate treatment in the Miami-Dade Department of Corrections resulted in the failure to provide the medical treatment that La Bruno needed." *Id.* at *8. Similarly, in *Rivas v. Figueroa*, No. 11-cv-23195, 2012 WL 1378161 at *3 (S.D. Fla. Apr. 20, 2012), this Court held that a plaintiff stated a claim for a custom or practice of excessive force by identifying sixteen prior instances in which officers had used

excessive force and had not been disciplined for doing so. *See also Brown*, 923 F.2d at 1477, 1481 (minority police officer stated a claim for a custom or practice of discrimination by alleging that seven white officers had previously been treated more favorably under similar circumstances); *Kucharczyk Westchester County*, No. 14-cv-601, 2015 WL 1379893 at *11 (S.D.N.Y. Mar. 26, 2015) (DOJ report outlining pervasive medical care deficiencies in county detention facilities sufficiently indicated that "there is no doubt that policymakers were aware of the need to reform medical care" in those facilities).[5]

The Amended Complaint's recitation of 20 prior instances of inmates receiving inadequate medical care and more than a half-dozen judicial orders and decisions to the same effect certainly place Plaintiff's allegations on the same level of sufficiency as *La Bruno, Rivas*, and other cases in which courts denied governmental defendants' motions to dismiss. The County, however, argues that the prior instances cited by Plaintiff are insufficiently similar to the precise harm suffered by Plaintiff to support a plausible custom or practice claim in this case. The Court disagrees. For one, the prior incidents identified by Plaintiff are much more factually similar to Plaintiff's case than the County indicates. For example, Plaintiff alleges that County employees "repeatedly dismissed" inmate Joshua Mancas' requests for treatment of his MRSA infection—just as County employees dismissed Plaintiff's requests for treatment of his chronic condition. Similarly, Plaintiff alleges that County employees failed to provide inmate Kippo Pruitt with the insulin treatments necessary for his diabetes, resulting in his death. Again, this is very similar to Plaintiff's contention that correctional officers in the Stockade refused his

---

[5] Indeed, courts have even found similar allegations to be sufficient to raise material issues of fact precluding summary judgment—a higher standard of proof than that at issue here, on the County's motion to dismiss. *See, e.g., Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1172–73 (11th Cir. 1995) (plaintiff raised a material issue of fact on government's custom or practice of mistreatment of mentally ill detainees by identifying (1) her own protracted detention, and (2) record evidence showing that the plaintiff was "not the only City inmate who has complained of a lack of adequate treatment for serious medical problems stemming from mental illness").

-8-

requests for his necessary medication and treatment. In fact, of the 20 prior instances identified by Plaintiff, at least 10 involved County employees' failure to treat inmates' medical needs in a timely manner—which is exactly the issue here.

Further, the test for whether prior incidents are sufficiently similar to a § 1983 plaintiff's harm is not as stringent as the County contends. While the prior instances identified by a § 1983 plaintiff need to be "substantially similar to those at hand in to be relevant to a deliberate-indifference claim," *see Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) (citation omitted), they need not be identical. In *Vasquez v. City of Miami Beach*, 895 F. Supp. 2d 1275, 1278 (S.D. Fla. 2012), for example, the plaintiff alleged that 38 prior instances in which city police had used excessive force showed a custom or practice of acquiescing in the officers' misconduct. The city—like the County here—argued that these prior instances were insufficiently similar to the plaintiff's alleged harm to establish a pattern of policymakers' deliberate indifference. This Court, however, found that "the incidents alleged by a plaintiff do not have to be 'precisely identical' to the facts in the plaintiff's case, but must be 'similar enough to make out a claim that [the defendant] has adopted a wide-spread practice of permitting its officers to use excessive force.'" *Id.* (citing *Rivas*, 2012 WL 1378161 at *3). Because the 38 prior instances of excessive force were "similar enough" to the harm allegedly suffered by the *Vasquez* plaintiff, this Court held that the plaintiff had stated a plausible custom or practice claim. *Id.*

Similarly, here, Plaintiff has alleged a significant number of prior instances in which County inmates received inadequate medical care. In some of these cases, County employees completely failed to provide the inmates with the treatment or medications necessary for their ailments. This is the harm that Plaintiff alleges in this case (albeit without the ultimate

intervention of the New York police officers who demanded treatment for Plaintiff before taking custody of him). In other cases, County employees partially treated inmates' medical needs, but did not provide them with the entire scope of treatment they required. In still others, County employees delayed necessary treatment for a substantial period of time. These cases, while not necessarily identical to the harm alleged by Plaintiff, are sufficiently similar to be relevant to Plaintiff's deliberate indifference claim. Therefore, Plaintiff has adequately alleged, at this stage in the litigation, a pervasive pattern or practice of deliberate indifference to inmates' medical needs preceding Plaintiff's one-week detention at the Stockade.

### B. Notice to County policymakers

In addition to identifying a pattern or practice, Plaintiff must show that County policymakers had notice of this pattern or practice sufficient to show that the County "kn[ew] or should have known that corrective measures are needed." *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1172 (11th Cir. 1995) (citing *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397–98 (11th Cir. 1994)).[6] Plaintiff may meet this burden by showing policymakers' actual or constructive notice of a prior pattern or practice of similar constitutional violations. *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). Plaintiff has alleged that County policymakers received such notice by the following: (1) direct complaints to County officials, (2) widespread news accounts in local newspapers and on local news television programs, (3) a three-year DOJ investigation into County employees' violations of inmates' constitutional rights, including the right to medical care, and (4) more than half a dozen judicial orders from both the Southern District of Florida and Florida state and county courts.

---

[6] *Young* noted that a § 1983 plaintiff could also demonstrate notice by showing "clear constitutional duties in recurrent situations." 59 F.3d at 1172 (citation omitted). Here, however, it is clear that Plaintiff is alleging notice by showing a pattern of constitutional violations, which is equally permissible. *See id.*

The County primarily argues that the forms of *direct* notice to County policymakers identified by Plaintiff (i.e., inmates' families' complaints[7] and the DOJ's notice) are insufficient to show that County policymakers were aware of a pervasive pattern of constitutional deprivations similar to Plaintiff's. This argument—which largely ignores the media reports, judicial orders, and sheer volume of prior incidents cited in the Amended Complaint—assumes that only direct complaints to County policymakers would suffice to demonstrate the policymakers' subjective awareness of a pattern of deliberate indifference to inmates' medical needs. To the contrary, "when city policymakers are on actual *or constructive* notice that a particular omission in their training program[8] causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 131 S. Ct. at 1360 (emphasis supplied). A plaintiff may show constructive notice by plausibly alleging that the defendant government "would have known of the violations if it had properly exercised its responsibilities, as for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

---

[7] The Amended Complaint alleges that three instances in which family members of inmates complained directly to County authorities of County employees' deliberate indifference to those inmates medical needs—once to the mayor, once to the County manager, and once to an individual County commissioner. The County seeks to whittle this list from three incidents of notice to two by arguing that the notice to a single County commissioner was not "notice" for the purposes of *Monell* liability, because the Miami-Dade County Charter vests policymaking authority in the Board of County Commissioners acting as a whole. The Court, however, need not address this argument because, as discussed below, Plaintiff has alleged sufficient constructive notice on the part of County policymakers to state a plausible claim for relief, regardless of whether actual notice to a single County commissioner counts as § 1983 "notice" of an unconstitutional pattern or practice.

[8] The parties argue over whether Plaintiff's § 1983 claim is subject to the "rigorous standards of culpability and causation" applicable to a failure-to-train theory of governmental liability. Plaintiff characterizes his claim as a "widespread pattern" claim, and contends that this distinction renders his claim subject to a lower standard than that which is applied to a failure to train claim. *See Connick*, 131 S. Ct. at 1359 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). While there are varying standards applied to different theories of *Monell* liability, the fine distinctions between the levels of culpability applicable here are ultimately irrelevant, as Plaintiff has plausibly alleged the requisite pattern, notice, and indifference for a claim proceeding under either theory.

Plaintiff has alleged widespread prior constitutional violations, publicity, and prolonged public discussions of County employees' deliberate indifference to inmates' medical needs. Plaintiff has alleged that the Miami Herald, Miami New-Times, and local television stations reported extensively on the issue in the decade prior to Plaintiff's detention. Plaintiff has also identified more than a half-dozen lawsuits and judicial orders from the period before Plaintiff's detention that involved the same failure to provide medical care. Finally, Plaintiff has alleged that the DOJ launched a well-publicized investigation into, among other things, County employees' treatment of chronically ill inmates in 2008—three years before Plaintiff's detention. Along with the sheer number and severity of prior similar instances identified in the Amended Complaint, these allegations indicate that any reasonably well-informed County policymaker, at the very least, "should have known" of a pattern of deliberate indifference to inmates' medical needs. *See Young*, 59 F.3d at 1172. Therefore, even assuming that some of Plaintiff's cited examples of direct notice to County policymakers were insufficient to place the County on *actual* notice, Plaintiff has still plausibly alleged that the County was on *constructive* notice of a pattern of constitutional violations similar to that suffered by Plaintiff.

### C. County policymakers' failure to act

Finally, to establish an unofficial custom or practice of deliberate indifference at the County-wide level, Plaintiff must also plausibly allege that, after being put on notice of a pattern of constitutional deprivations, County policymakers "made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (emphasis supplied). A local government's failure to respond to notice of a pattern of constitutional violations shows that "the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *Jett v. Dallas Indep. Sch. Dist.*,

491 U.S. 701, 737 (1989)); *see also Simmons v. City of Philadelphia*, 947 F.2d 1042, 1062–63 (3d Cir. 1991) (requiring "scienter-like" evidence of a policymaker's disregard of a pattern of constitutional violations). Plaintiff has alleged that the following illustrate the failure of County policymakers to take appropriate remedial measures, upon receiving notice of a pervasive pattern of constitutional violations: (1) the DOJ's conclusion, in 2011, that the County Department of Corrections and Rehabilitation had systematically violated inmates' rights to medical care, (2) additional inmate deaths in 2012 and 2013, (3) the DOJ's 2013 lawsuit against the County, which alleged that, despite the DOJ's 2008–2011 investigation, County employees continued to routinely violate inmates' rights to medical care, and (4) more-recent comments from individual County commissioners complaining of continuing "systematic" violations of inmates rights, including inmates' rights to medical care.

The County argues that the DOJ's 2008 notice to the County mayor of its investigation fails to show the "culpable mental state" required of a *Monell* claim, because the mayor responded to the notice with a plan to correct the issues identified by the DOJ. Critically, however, Plaintiff has plausibly alleged that the mayor did not, in fact, correct the constitutional deficiencies identified in the DOJ's notice. Indeed, the DOJ's three-and-a-half year investigation, which finished shortly after Plaintiff's detention, concluded that the County's correctional institutions suffered from major and systemic flaws in the provision of medical treatment to inmates, notwithstanding the mayor's former promise to correct these and other deficiencies. Plaintiff also alleges that these systemic deficiencies continued in the years after his incarceration, as evidenced by additional inmate deaths, the comments of County policymakers, and the DOJ's subsequent lawsuit against the County.[9]

---

[9] Because these allegations concern events that occurred after Plaintiff's detention, they are not relevant to establishing whether Plaintiff has adequately alleged an unconstitutional pattern or practice

Plaintiff's allegations of a continuing failure to provide inmates with necessary medical care, even after the mayor had recognized and promised to correct the problem, distinguish this case from *Vila v. Miami-Dade County*, 65 F. Supp. 3d 1371, 1379–80 (S.D. Fla. 2014). In *Vila*, the plaintiff brought suit on behalf of a mentally ill man who died in County custody, and alleged that the County had adopted an unofficial custom or practice of depriving mentally ill inmates of their constitutional right to treatment. *Id.* The *Vila* plaintiff attempted to plead a § 1983 claim against the County by citing the mayor's letter in response to the DOJ's investigation, in which the mayor promised to correct the issues cited by the DOJ—the same letter cited by Plaintiff in the Amended Complaint. The *Vila* plaintiff, unlike Plaintiff here, provided no allegations showing that the County had continued to disregard notice of unconstitutional mistreatment of mentally ill arrestees following the mayor's letter. Therefore, the court in *Vila* concluded that the plaintiff's allegations "indicate at worst that County policymakers recognized a deficiency and attempted to rectify it." *Id.*

Here, on the other hand, Plaintiff has alleged that even after the mayor responded to the DOJ's notice of investigation with a plan to improve the County's treatment of chronically inmates the inmates continued to receive deficient or nonexistent medical care, and that County policymakers were aware of these deficiencies. This is sufficient, at the motion to dismiss stage, to plausibly allege that the County made a deliberate choice not to take action. *See Gold*, 151 F.3d at 1350; *see also Depew*, 787 F.2d at 1499–1501 (evidence that municipality's policymakers were "aware of prior complaints of excessive force," but "continued to assert that the department's supervision was satisfactory and that the officers were doing a good job," was

---

at the time of his detention. Indeed, they are not necessary to establishing such a pattern; as previously discussed, Plaintiff's allegations of pre-2011 incidents and notice are sufficient to state a claim for a pattern of constitutional deprivations, as well as notice of that pattern. However, Plaintiff's post-2011 allegations are relevant to the Court's determination of whether Plaintiff has adequately alleged that County policymakers failed to respond, and are considered here for that purpose alone.

-14-

sufficient to support a jury verdict against the municipality); *Hall v. City of Chicago*, 989 F. Supp. 2d 699, 709 (N.D. Ill. 2013) (denying city's motion to dismiss Section 1983 claim, based on the plaintiffs' allegation that "the City adhere to deficient training practices and materials after it had notice of a pattern of constitutional violations"); *Marriott v. Cnty. of Montgomery*, 426 F. Supp. 2d 1, 9 (N.D.N.Y. 2006) ("Constitutional words cannot erase unconstitutional conduct.").[10]

## IV.    CONCLUSION

For the foregoing reasons, the County's motion to dismiss [D.E. 60] is DENIED. The County shall file its answer to the Amended Complaint by August 3, 2015.

DONE AND ORDERED in Chambers, Miami, Florida, July *13*, 2015.

Paul C. Huck
United States District Judge

Copies furnished to:
Magistrate Judge Alicia M. Otazo-Reyes
All Counsel of Record

---

[10] The County also contends that Plaintiff's § 1983 claim has "serious causation problems." The County's arguments as to the causation element of a *Monell* custom or practice claim, however, are largely duplicative of the arguments addressed in this section.

-15-